In re BEST RECEPTION SYSTEMS, INC., Debtor.

Joel STEPHENSON,

v.

RICKLES ELECTRONICS & SATELLITES, et al.

Donald HICKS, et al.,

v.

SKY–LINK CABLE, INC., et al.

Sykes POTTER,

v.

STAR VISION, INC.

Mary WILLIAMS, et al.,

v.

Maurice STINSON, et al.

Angela R. SMITH,

v.

C.A.M.P. UNLIMITED, INC., et al.

James ANDERSON, Plaintiffs (w/ Multiple Defendants),

v.

BENEFICIAL NATIONAL BANK USA, Defendant / Third Party Plaintiff.

Larue PERRYMAN,

v.

SATELLITE CONNECTIONS, INC., et al.

Howard ESCO,

v.

C.A.M.P. UNLIMITED, INC., et al.

James J. DAVIS,

v.

THE SOURCE CARD, et al.

Gladys FREEMAN,

v.

H & H CABLE SYSTEMS, INC., et al.

Jimmy JACKSON, et al.,

v.

C.A.M.P. CABLE CONCEPTS, INC., et al.

Julius LANIER,

v.

SPS TRANSACTION SERVICES, INC., et al.

Ethel JENKINS, et al., Plaintiffs (w/ Multiple Defendants),

v.

HURLEY STATE BANK, Defendant / Third Party Plaintiff.

Bankruptcy No. 97–31372.
Adversary Nos. 97–3123, 97–3132, 97–3144, 97–3170, 97–3181, 97–3199, 97–3133, 97–3135, 97–3136, 97–3154, 97–3185, 97–3231 and 97–3258.

United States Bankruptcy Court, E.D. Tennessee.

April 15, 1998.

Von G. Memory, Memory & Gilliland, L.L.C., Montgomery, AL, Michael Fitzpatrick, Jenkins & Jenkins, Knoxville, TN, for Donald Hicks, Howard Esco, James J. Davis and Sykes Potter.

Barry A. Rafsdale, King, Ivey & Warren, Birmingham, AL, for Joel Stephenson and Jimmy Jackson.

George B. Azar, Azar & Azar, Montgomery, AL, for James Anderson.

Edward B. Parker, II, Parker & Mooty, P.C., Montgomery, AL, for Larue Perryman.

Ted L. Mann, Tedd L. Mann, P.C., Birmingham, AL, for Gladys Freeman and Angela R. Smith.

Charles H. Morris, III, Selma, AL, for Julius Lanier.

Roger K. Futson, Birmingham, AL, John M. Gibbs, Demopolis, AL, for Ethel Jenkins.

John A. Walker, Jr., Walker & Walker, P.C., Knoxville, TN, Vincent Marriott, III, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Beneficial National Bank USA.

John A. Walker, Jr., Walker & Walker, P.C., Knoxville, TN, Stephen B. Porterfield, Wilson F. Green, Sirote & Permutt, Birmingham, AL, for Hurley State Bank.

James T. Sasser, Rebecca A. Walker, Gadsen, AL, for Rickles Electronics & Satellites.

J. Gregory O'Conner, Carpenter & O'Conner, Knoxville, TN, for Cable Alternatives, Inc., Ray Ogle, John Coe and Susan Ogle.

Johnny Hardwick, Montgomery, AL, for C.A.M.P. Cable Concepts, C.A.M.P. Unlimited, Inc., Leon C. Allen, Shirley Allen, Maurice Stinson and Carl Hamilton.

Dean B. Farmer, Hodges, Doughty & Carson, Knoxville, TN, Kyle R. Weems, Weems & House, Chattanooga, TN, for Best Reception Systems, Inc.

## MEMORANDUM on EXPEDITED OMNIBUS MOTIONS of BENEFICIAL NATIONAL BANK USA and HURLEY STATE BANK for STAY PENDING APPEAL

RICHARD S. STAIR, Jr., Chief Judge.

On March 5, 1998, this court entered abstention and remand orders in forty-nine adversary proceedings that were commenced in several different state courts of Alabama and, in one instance, Georgia. These actions had been removed to various bankruptcy courts in Alabama and one bankruptcy court in Georgia and thereafter transferred to this court. Beneficial National Bank USA (Beneficial) is a defendant in eight of these actions. Household Retail Services, Inc. (Household) is a defendant in thirty-three of the actions. Hurley State Bank (Hurley) is a defendant in eight of the actions. Beneficial, Household, and Hurley are not joined as co-defendants in any of the actions. Beneficial, Household,

and Hurley, pursuant to 28 U.S.C.A. § 1452(a) (West 1994), each removed the actions in which they were respectively named as a defendant to the bankruptcy court for the federal district in which the applicable state court action was pending. The actions were then transferred to this court, pursuant to 28 U.S.C.A. § 1412 (West 1993), because of the Chapter 11 case of Best Reception Systems, Inc., a case that is pending before this court.

The pleadings in the forty-nine actions contain substantially the same legal theories and allegations which are summarized hereinafter. The Debtor engaged in the sale and distribution of "C-band" satellite equipment for the receipt of satellite television signals. For the purpose of marketing its goods, the Debtor entered into dealer agreements with various retailers of satellite dish equipment. Pursuant to the dealer agreements, these retailers served as authorized dealers of the Debtor's "C-band" satellite equipment. To facilitate the financing of purchases from its authorized dealers, the Debtor entered into three separate agreements with Beneficial, Household, and Hurley, each individually, whereby the latter parties agreed to finance all purchases made by qualified customers of the Debtor's authorized dealers. By the terms of the agreements between the Debtor and Beneficial, Household, or Hurley, the Debtor agreed to indemnify Beneficial, Household, and Hurley from any claims asserted against these parties as a result of the misconduct of any of the Debtor's authorized dealers in conjunction with the purchases that Beneficial, Household, and Hurley financed.

Following the sale and financing of the Debtor's satellite equipment in accordance with the arrangements established by the Debtor, numerous lawsuits were filed in the state courts of Alabama, and in one instance Georgia, by purchasers of the equipment against, among other parties, the dealerships and individual salespersons who sold the

equipment to them, and the entity that financed the purchase, being either Beneficial, Household, or Hurley. The actions, many of which seek both compensatory and punitive damages, allege, among other things, that the defendants misrepresented the terms of the sales, and more specifically, the terms of the financing. In some of the actions, but not all, the Debtor is named as a defendant. In such instances, the named defendant that financed the purchase, being either Beneficial, Household, or Hurley, filed a cross-claim against the Debtor for indemnification pursuant to the agreement between the two parties concerning the financing of the satellite equipment. In all but four of those actions where the Debtor is not named as a defendant, third party complaints have been filed against the Debtor by either Beneficial, Household, or Hurley, also seeking indemnification pursuant to contract. Specifically, the cross-claims and third party claims allege that misconduct on the part of an authorized dealer or its representative gave rise to the claims against Beneficial, Household, or Hurley, thereby effectuating the Debtor's obligation of indemnification. The Debtor denies that Beneficial, Household, and Hurley are entitled to indemnification.

Motions for abstention and/or remand were filed by the plaintiffs in thirty-two of these actions. Additionally, Beneficial and Hurley filed a Joint Motion to Alter or Amend Judgment, asking the court to alter or amend a September 30, 1997 scheduling

Order wherein the court determined, pursuant to 28 U.S.C.A. § 157(b)(3) (West 1993), that each of the actions constituted a non-core proceeding that was otherwise related to the Debtor's Chapter 11 case.[1] Following various scheduling conferences and oral argument on the motions, the court, by a March 5, 1998 Memorandum on Joint Motion to Alter or Amend Judgment Filed by Defendants Beneficial National Bank USA and Hurley State Bank and Plaintiffs' Motions for Abstention and/or Remand (Memorandum), concluded that: (1) each of the forty-nine adversary proceedings contained a combination of core proceedings, non-core related proceedings and/or non-core unrelated proceedings[2]; (2) it was required and/or compelled, depending upon the particulars of each action, to abstain from hearing the actions under the authority of 28 U.S.C.A. § 1334(c) (West Supp.1997)[3]; and (3) the actions should be remanded, pursuant to 28 U.S.C.A. § 1452(b) (West 1994), to the state courts from which they were removed.[4] Corresponding orders were entered in each of the adversary proceedings on March 5, 1998. Beneficial, on March 10, 1998, filed a Notice of Appeal in six of the adversary proceedings in which it is named as a defendant.[5] Hurley, on March 16, 1998, filed a Notice of Appeal in seven of the adversary proceedings in which it is named as a defendant.[6] Household did not appeal the March 5, 1998 decision with respect to any of the thirty-three

---

1. A number of the other defendants to the actions later joined the Joint Motion to Alter or Amend Judgment.

2. Specifically, the court concluded that forty-two of the adversary proceedings contained core, non-core related and non-core unrelated proceedings; three of the adversary proceedings contained both core and non-core related proceedings; while four of the adversary proceedings contained only non-core related and non-core unrelated proceedings.

3. Specifically, the court concluded that the provisions of both mandatory and permissive abstention applied in twenty-five of the adversary proceedings while the provisions of permissive abstention alone applied in twenty-four of the adversary proceedings.

4. In addition to the forty-nine actions that were remanded, the March 5, 1998 Memorandum also addressed five adversary proceedings that were

determined to contain exclusively core proceedings. Accordingly, the court entered orders in these adversary proceedings vacating its earlier order determining that these adversary proceedings contained only non-core but related proceedings. These adversary proceedings were not remanded by the court.

5. Beneficial filed a Notice of Appeal in Adversary Nos. 97–3123, 97–3132, 97–3144, 97–3170, 97–3181, and 97–3199. Beneficial did not file a Notice of Appeal in two other adversaries in which it is a defendant, Nos. 97–3113 and 97–3178.

6. Hurley filed a Notice of Appeal in Adversary Nos. 97–3133, 97–3135, 97–3136, 97–3154, 97–3185, 97–3231, and 97–3258. Hurley did not file a Notice of Appeal in another adversary, No. 97–3111, in which it is a defendant.

actions in which it was named as a defendant.[7]

The court now has before it an Expedited Omnibus Motion of Beneficial National Bank USA for Stay Pending Appeal, filed on March 11, 1998, and an Expedited Omnibus Motion of Hurley State Bank for Stay Pending Appeal, filed on March 16, 1998. By their motions, Beneficial and Hurley seek, pursuant to FED. R. BANKR. P. 7062 and 8005, a stay of the March 5, 1998 orders remanding the adversary proceedings in which they have filed a Notice of Appeal to the state courts from which they were removed. Both Beneficial and Hurley have briefed their motions. No responses have been filed.

## I

In bankruptcy, motions for stay pending appeal are governed by FED. R. BANKR. P. 8005, which provides in material part:

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on

the filing of a bond or other appropriate security with the bankruptcy court.

The United States District Court for the Eastern District of Tennessee, in construing Rule 8005, has stated:

The criteria governing a motion for a stay ... is set out in FED. R. BANKR. P 8005. Under that rule, the appellant must show that (1) he will likely prevail on the merits of the appeal, (2) he will suffer irreparable injury if the stay is denied, (3) other parties will not be substantially harmed by the stay, and (4) the public interest will be served by granting this stay.

*Bradford v. J.C. Bradford & Co. (In re Bradford)*, 192 B.R. 914, 917 (E.D.Tenn.1996).

Virtually the same standard has been enunciated by the Sixth Circuit with respect to the issue of whether a stay pending appeal should be granted under the authority of FED. R. APP. P. 8(a).

In determining whether a stay should be granted under FED. R. [APP]. P. 8(a), we consider the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction. These well-known factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir.1991) (citations omitted). At first appearance, one may question the significance of *Griepentrog* to an analysis under the authority of FED. R. BANKR. P. 8005. However, the first, third, and fourth sentences of Rule 8005 are adaptations of FED. R. APP. P. 8(a) and (b). FED. R. BANKR. P. 8005 advisory committee's note. Consequently, the Bankruptcy Appellate Panel of the Second Circuit has applied the standard for determining

---

7. Household has stayed the finality of the court's March 5, 1998 Order with regard to one adversary, No. 97–3232, by the filing of a Motion to Alter or Amend on March 16, 1998. That motion has been denied by the court for the reasons stated in an April 6, 1998 Memorandum on Household Retail Services, Inc.'s Motion to Alter

or Amend. Entry of the Order denying Household's Motion to Alter or Amend has, however, been deferred by the court through April 16, 1998, to provide Household an opportunity to request that the district court withdraw the reference of the adversary proceeding.

whether a stay pending appeal should be granted under FED. R. APP. P. 8(a), enunciated by the Second Circuit in *Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir. 1993), to the determination of whether a motion pursuant to FED. R. BANKR. P. 8005 should be granted. *See Country Squire Assocs. of Carle Place, L.P. v. Rochester Community Sav. Bank (In re Country Squire Assocs. of Carle Place, L.P.)*, 203 B.R. 182, 183 (2d Cir. BAP 1996).

■ One might still question the significance of *Griepentrog* to a Rule 8005 motion before a bankruptcy court, as opposed to a district court or a bankruptcy appellate panel, given that only the first two sentences of FED. R. BANKR. P. 8005 are material to a motion for a stay pending appeal filed with the bankruptcy court. More importantly, it is only the second of these first two sentences—the one that is not an adaptation of FED. R. APP. P. 8(a) and (b)—that sets forth the substantive standard governing the bankruptcy court's determination.[8] Notwithstanding, two bankruptcy courts within the Sixth Circuit have applied the *Griepentrog* standard to a motion for a stay pending appeal pursuant to FED. R. BANKR. P. 8005. *See In re Dow Corning Corp.*, 194 B.R. 147, 148 (Bankr.E.D.Mich.1996); *Rossi, McCreery and Assoc., Inc. v. Abbo (In re Abbo)*, 191 B.R. 680, 682–83 (Bankr.N.D.Ohio 1996).

Because the standards set forth in *Bradford* and *Griepentrog* are essentially identical, one might conclude that such a distinction is merely academic. However, *Griepentrog* elaborates upon the standard in a manner that *Bradford* does not. First, *Griepentrog* establishes that the four-part standard is not to be construed as containing four separate requirements, each of which must be established to merit a stay pending appeal. *Griepentrog*, 945 F.2d at 153. Instead, the four factors are merely "interrelated considerations that must be balanced together." *Id.* The court further explained:

> To justify the granting of a stay, however, a movant need not always establish a high probability of success on the merits.

The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits."

In evaluating the harm that will occur depending upon whether or not the stay is granted, we generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. In evaluating the degree of injury, it is important to remember that

> [t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim or irreparable harm.

In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical. In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again.

Of course, in order for a reviewing court to adequately consider these four factors, the movant must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist.

*Id.* at 153–54 (citations omitted)(quoting, in order, *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 n. 4 (6th Cir.1977); *Unsecured Creditors' Comm. of DeLorean*

---

8. The second sentence of FED. R. BANKR. P. 8005 is derived from § 39(c) of the Bankruptcy Act of 1898. FED. R. BANKR. P. 8005 advisory committee's note.

*Motor Co. v. DeLorean (In re DeLorean Motor Co.)*, 755 F.2d 1223, 1229 (6th Cir. 1985); *Sampson v. Murray*, 415 U.S. 61, 90–92, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974)).

Similar to the bankruptcy courts in *Dow Corning* and *Rossi*, this court will apply the *Griepentrog* standard under FED. R. BANKR. P. 8005.

## II

### A. The Likelihood That The Party Seeking The Stay Will Prevail On The Merits Of The Appeal

Beneficial and Hurley have identified two aspects of the March 5, 1998 Memorandum that they intend to challenge upon appeal: (1) the court's conclusion that the term "proceeding" employed in 28 U.S.C .A. §§ 1334 and 157 (West 1993 & Supp.1997) refers to each individual cause of action and ground for relief sought by a party and not the entire adversary proceeding before the court (*See* Memorandum at 21–23, 31–33);[9] and (2) the court's conclusion that "[t]he various state courts from which [the forty-nine adversary] proceedings were removed can resolve them more expeditiously than if this court were required to do the entire job itself" (*See* Memorandum at 35). Under the authority of *Griepentrog*, Beneficial and Hurley must establish "at a minimum, 'serious questions going to the merits' " of the foregoing conclusions regardless of the measure of irreparable harm that they will suffer absent a stay pending appeal. *See Griepentrog*, 945 F.2d at 153–54 (citation omitted).

■ Beneficial and Hurley contend that there are serious questions going to the merits of the first of these conclusions because "[t]his Court itself ... acknowledged the substantial authority that does not require each and every cause of action in a proceeding to be independently a core matter in order for the proceeding itself to be considered core." (Br. in Supp. of Expedited Omnibus Mot. of Beneficial National Bank USA for Stay Pending Appeal at 6; Br. in Supp. of Expedited Omnibus Mot. of Hurley State Bank for Stay Pending Appeal at 7.) There is no question that many courts from other jurisdictions have reached a contrary conclusion when examining the same issue. (*See* Memorandum at 31–32.) Ordinarily this would create a serious question going to the merits of this court's conclusion. However, in this instance, this court was simply following controlling authority by which it is bound—namely *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

In *Marathon*, "the Supreme Court concluded that the delegation of Article III powers to non-tenured bankruptcy judges by the Bankruptcy Reform Act of 1978 was unconstitutional." (Memorandum at 15.) The Court, in distinguishing public rights from private rights, made it clear that "only controversies in the former category may be removed from Art. III courts and delegated to legislative courts or administrative agencies for their determination." *Marathon*, 458 U.S. at 70–71, 102 S.Ct. at 2871. Specifically, the Court reasoned that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights." *Id.* It has been suggested that this very sentence prompted Congress to codify the "core proceeding" lan-

9. Beneficial and Hurley, in their briefs, have misstated this legal conclusion as follows: "the Court held ... that each cause of action asserted in a proceeding must be independently a core matter *or the proceeding as a whole cannot be determined to be core.*" (Br. in Supp. of Expedited Omnibus Mot. of Beneficial National Bank USA for Stay Pending Appeal at 6; Br. in Supp. of Expedited Omnibus Mot. of Hurley State Bank for Stay Pending Appeal at 7) (emphasis added). This court was very careful to articulate that an adversary proceeding, which is the "proceeding" that Beneficial and Hurley refer to in the italicized portion of their quote, is not to be labeled as core or non-core. Instead, the word "pro-

ceeding," as it is used in 28 U.S.C.A. §§ 1334 and 157, refers only to each individual cause of action asserted in bankruptcy. Bankruptcy courts are never to decide whether an adversary proceeding, as a whole, is core or non-core because 28 U.S.C.A. § 157(b)(3) (West 1993), the only statutory provision empowering bankruptcy courts to make a core/non-core determination, does not apply to adversary proceedings but only individual causes of action asserted within the context of a bankruptcy case. (*See* Memorandum at 21–23, 31–32). These causes of action may be asserted, *inter alia*, through an adversary proceeding or a contested matter. *See* FED. R. BANKR. P. 9014.

guage employed in 28 U.S.C.A. § 157. *See e.g., Production Steel, Inc. v. Bethlehem Steel Corp. (In re Production Steel, Inc.),* 48 B.R. 841, 845 (M.D.Tenn.1985); *Cumberland River Coal Co. v. United States (In re Blue Diamond Coal Co.),* 163 B.R. 798, 808–09 (Bankr.E.D.Tenn.1994) (quoting *United Sec. & Communications, Inc. v. Rite Aid Corp. (In re United Sec. & Communications, Inc.),* 93 B.R. 945, 954 (Bankr.S.D.Ohio 1988)). Consequently, under the authority of *Marathon* and 28 U.S.C.A. § 157, controversies that are not "at the core of the federal bankruptcy power" cannot be delegated to a bankruptcy court, being a legislative court. To say that a bankruptcy court is authorized to entertain actions that are not at the core of the federal bankruptcy power, absent the consent of the parties, simply because the same lawsuit also contains an action that is at the core of the federal bankruptcy power flies in the face of *Marathon.* Accordingly, there is no serious question going to the merits of this court's March 5, 1998 conclusion regarding the core/non-core status of the actions asserted in the forty-nine adversary proceedings, notwithstanding the fact that a significant number of courts have elected to ignore the mandate of *Marathon.*

■ Beneficial and Hurley further contend that there are serious questions going to the merits of the second of the above-identified conclusions because

> there was no evidence presented to this Court regarding how quickly these ... [c]ases could be tried in Alabama.... Accordingly, implicit in this Court's decision was the taking of judicial notice of the state of the dockets in the various counties in Alabama.

(Br. in Supp. of Expedited Omnibus Mot. of Beneficial National Bank USA for Stay Pending Appeal at 6; Br. in Supp. of Expedited Omnibus Mot. of Hurley State Bank for Stay Pending Appeal at 7.) Specifically, Beneficial and Hurley "believe[ ] that a substantial case can be made on appeal that for a court sitting in Tennessee, the condition of the dockets and the procedures regarding trial scheduling in various counties in the state of Alabama do not fit within the scope of Rule 201(b) [of the Federal Rules of Evidence]." [10] (Br. in Supp. of Expedited Omnibus Mot. of Beneficial National Bank USA for Stay Pending Appeal at 7; Br. in Supp. of Expedited Omnibus Mot. of Hurley State Bank for Stay Pending Appeal at 8.)

Beneficial and Hurley are incorrect in their assumption that this court arrived at its conclusion by taking judicial notice of the dockets of various Alabama state courts. They are also incorrect in their assertion that there was no evidence before the court from which the court could derive its conclusion. To the contrary, the record clearly established that the fifty-four adversary proceedings before the court were removed from twenty-two courts in the state of Alabama and one in the state of Georgia. (Memorandum at 38 n.33.) Moreover, the twenty-five adversary proceedings in which abstention motions were filed were removed from fourteen different courts in the state of Alabama. (Memorandum at 35 n.31.) These established facts, when analyzed in light of the convoluted jurisdictional scheme in federal court with respect to jury trials in bankruptcy proceedings where the parties have not consented to the conduct of a jury trial by a bankruptcy judge, led this court to its conclusion. (Memorandum at 35 n.31.) Accordingly, it is irrelevant whether Beneficial and Hurley can establish a substantial case on appeal that a Tennessee court cannot take judicial notice of the status of the dockets of various courts in Alabama.

### B. The Remaining *Griepentrog* Considerations

Because Beneficial and Hurley have not established the existence of serious questions going to the merits of the court's March 5, 1998 Memorandum, their motions for stay pending appeal must be denied under the authority of *Griepentrog* regardless of the other three considerations set forth by the Sixth Circuit. *See Griepentrog,* 945 F.2d at 154 ("[The movant] is ... required to show, at a minimum, 'serious questions going to the merits.'" (citation omitted)).

---

**10.** Federal R. Evid. 201 governs the taking of judicial notice of adjudicative facts.

## III

In the alternative to FED. R. BANKR. P. 8005, Beneficial and Hurley seek a stay pending appeal by the posting of a supersedeas bond pursuant to FED. R. CIV. P. 62(d), applicable to this adversary proceeding pursuant to FED. R. BANKR. P. 7062, which provides in material part:

> When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule.

The exceptions of Rule 62(a) are "an interlocutory or final judgment in an action for an injunction or in a receivership action, or a judgment or order directing an accounting in an action for infringement of letters of patent." In view of the exceptions, "[c]ourts have restricted the application of Rule 62(d)'s automatic stay to judgments for money because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment." *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir.1992); *accord In re Capital West Investors*, 180 B.R. 240, 242–45 (N.D.Cal. 1995). Because the March 5, 1998 orders of this court from which Beneficial and Hurley appeal do not concern the award of a money judgment, Beneficial and Hurley are not entitled to a stay pursuant to FED. R. CIV. P. 62(d).

## IV

For the foregoing reasons, the Expedited Omnibus Motion of Beneficial National Bank USA for Stay Pending Appeal, filed on March 11, 1998, and the Expedited Omnibus Motion of Hurley State Bank for Stay Pending Appeal, filed on March 16, 1998, will be denied. Appropriate orders will be entered.